UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **JANINE ROE,** | |
| **Plaintiff,** | C.A. No.: |
| v. | |
| **LVNV FUNDING, LLC,** | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiff Janine Roe, by and through the undersigned counsel, complains, states, and alleges against defendant LVNV Funding, LLC, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA").

2. In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using

1

abusive debt collection practices are not competitively disadvantaged." *Id*., § 1692(e). After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id*., § 1692k.

4.  In determining whether a collection letter violates the FDCPA, courts in the Third Circuit apply the "least sophisticated consumer standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is an objective one, meaning the specific consumer need not prove that she was actually confused or misled. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

5.  The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

## JURISDICTION AND VENUE

6.  This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

7.  This court has jurisdiction over defendant LVNV Funding, LLC because a substantial part of the conduct complained of herein occurred in this Judicial District.

8.  Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because a defendant LVNV Funding, LLC resides in this Judicial District and a substantial part of the conduct complained of herein occurred in this Judicial District.

## PARTIES

9.  Plaintiff Janine Roe ("Plaintiff") is a natural person who is a citizen of New Market, Frederick County, State of Maryland.

10. Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

11. Defendant LVNV Funding, LLC ("LVNV") is a company existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

12. LVNV has transacted business within this state as is more fully set forth hereinafter in this Complaint.

13. LVNV regularly collects or attempts to collect debts asserted to be owed to others.

14. LVNV is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

15. The principal purpose of LVNV's business is the collection of such debts.

16. LVNV uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

17. LVNV is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. The acts of the Defendant as described in this Complaint were performed by the Defendant or on Defendant's behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to "Defendant" in this Complaint shall mean Defendant or its owners, officers, agents, and/or employees.

## FACTUAL ALLEGATIONS

19. LVNV is one of the "Resurgent Companies," which is a self-labeled group of at least two dozen entities, all interrelated in a complex business structure focusing primarily on the purchase and collection of consumer debt.

20. In addition to LVNV, these companies include Anson Street LLC, Ashley Funding Services LLC, CACH, LLC, CACV of Colorado, LLC, East Bay Funding, LLC, East Bay Holdings, LLC, Pinnacle Credit Services, LLC, PYOD LLC, Resurgent Acquisitions, LLC,

Resurgent Capital Services PR LLC ("Resurgent"), Resurgent Funding, LLC, Resurgent Receivables, LLC, Resurgent Strategic Investments, LLC, SFG REO, LLC, Sherman Acquisition LLC, Sherman Capital, LLC, Sherman Financial Group, LLC, Sherman Originator III LLC, and Sherman Originator LLC.

21. The majority of the two dozen Resurgent Companies, including LVNV, are shell companies managed by a single individual, Bryan Faliero ("Faliero"), and have no employees of their own, but are instead controlled by "Resurgent Capital Services." Faliero is also the President and CEO of Resurgent.

22. LVNV has no employees.

23. LVNV has no collection agreements.

24. Instead, employees of Resurgent act as unpaid "representatives" of LVNV and many of the other shell companies through what the employees believe is a "limited power of attorney."

25. These "representatives" are often unaware of whether at a given time they are acting as an employee of Resurgent, a representative of one of the shell companies, or both.

26. Through the shell companies, Resurgent "purchases" large portfolios of consumer debt for pennies on the dollar, and at the exact same time that the portfolios are purchased, the shell companies literally simultaneously "sell" the portfolios to each other using a bogus document entitled a "Declaration of Transfer and Assignment" (the "Declarations.")

27. The Declarations appear at first glance to be legitimately hand-signed documents, purportedly transferring the ownership of subject accounts between the shell companies. However, the Declarations are neither signed, nor legitimate. Instead, they are a sham.

28. Indeed, both the "signature" and "signature block" of Jon Mazzoli (listed as a "Director" of Sherman Originator III, LLC) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Mazzoli. Below is a single example take from the hundreds of sham Declarations:

| Dated: **January 15, 2020** | Sherman Originator III LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Jon Mazzoli<br>Title: Director | Dated: **February 28, 2017** | Sherman Originator III LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Jon Mazzoli<br>Title: Director |
|---|---|---|---|

29. Both the "signature" and "signature block" of Jackson Walker (listed as an "Authorized Representative" of Sherman Originator) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Walker. Below is a single example take from the hundreds of sham Declarations:

| Dated: **July 30, 2019** | Sherman Originator LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Jackson Walker<br>Title: Authorized Representative | Dated: **August 17, 2021** | Sherman Originator LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Jackson Walker<br>Title: Authorized Representative |
|---|---|---|---|

30. Both the "signature" and "signature block" of Daniel Picciano (listed as an "Authorized Representative" of Sherman Originator) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Picciano. Below is a single example take from the hundreds of sham Declarations:

| Dated: **December 18, 2019** | LVNV Funding LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Daniel Picciano<br>Title: Authorized Representative | Dated: **May 14, 2021** | LVNV Funding LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Daniel Picciano<br>Title: Authorized Representative |
|---|---|---|---|

31. Both the "signature" and "signature block" of Kevin Branigan (listed as an "Authorized Representative" of Sherman Originator) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Branigan. Below is a single example take from the hundreds of sham Declarations:

| Dated: **June 15, 2018** | Sherman Originator LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Kevin Branigan<br>Title: Authorized Representative | Dated: **December 18, 2018** | Sherman Originator LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Kevin Branigan<br>Title: Authorized Representative |
|---|---|---|---|

32. Both the "signature" and "signature block" of Rusty Kendall (listed as an "Authorized Representative" of LVNV) are clearly lifted from a single Declaration, and then cut-and-pasted onto thousands of other Declarations, the only difference being the alleged date the Declaration was purportedly signed by Mr. Kendall. Below is a single example take from the hundreds of sham Declarations:

| Dated: **August 20, 2018** | LVNV Funding LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Rusty Kendall<br>Title: Authorized Representative | Dated: **December 06, 2018** | LVNV Funding LLC<br>a Delaware Limited Liability Company<br>By: _[signature]_<br>Name: Rusty Kendall<br>Title: Authorized Representative |
|---|---|---|---|

33. Over at least the past six (6) years, LVNV and the other shell companies have flooded state courts across the country, including this court, with hundreds of thousands of lawsuits claiming consumers owe them money based on these bogus Declarations. These Declarations are set forth in the complaints against theses consumers as alleged "proof" of LVNV's "chain of title." These Declarations also served as the basis for LVNV to demand payment via letter, from hundreds of thousands of consumers, including Plaintiff.

6

34. Indeed, here, LVNV's purported right to demand payment from Plaintiff is based only on one of the sham Declarations. No independent right to payment is even claimed by LVNV.

35. Plaintiff is a victim of LVNV's illegal conduct.

36. LVNV alleges Plaintiff owes a debt to LVNV for a personal credit card account from Synchrony Bank ("Synchrony").

37. Plaintiff retained counsel to assist Plaintiff with the Synchrony debt.

38. On November 3, 2021 and December 14, 2021, Plaintiff's counsel notified Synchrony of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease ("the Letters of Representation").

39. The Letters of Representation set forth Plaintiff's attorneys' name and address.

40. In fact, Synchrony's attorneys acknowledged Plaintiff's attorneys' representation and began communicating with Plaintiff's attorneys.

41. LVNV alleges the alleged debt was purportedly sold, assigned, and/or transferred to LVNV for purposes of collection.

42. Thereafter, LVNV placed and/or assigned the alleged debt with a debt collector agent for purposes of collection on behalf of LVNV.

43. Despite the Letters of Representation, in an attempt to collect the alleged debt, LVNV, by and through its debt collector agent, sent Plaintiff a email on behalf of LVNV, dated November 2, 2023 (the "November Email") directly to Plaintiff.

44. The November Email was received and read by Plaintiff.

45. Plaintiff's attorney did not consent to LVNV's direct communication with Plaintiff.

46. LVNV or its debt collector agent did not send the November Email to Plaintiff's

attorney.

47. LVNV's debt collector agent did not send any letters concerning the alleged debt to Plaintiff's attorney.

48. LVNV's debt collector agent did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt.

49. When a consumer's account is sold in a **true sale** the purchaser would receive the entire file and account history from the seller for the account.

50. The legal standard for a true sale is governed by both federal and state law.

51. Additionally, the criteria for a true sale under U.S. GAAP would include: i) legal isolation of the transferred assets, which places the assets beyond the reach of the transferor's creditors or a bankruptcy trustee for the transferor, ii) the transferee's right to freely pledge or exchange the transferred assets, and iii) the transferor's relinquishment of effective control of the transferred assets.

52. Conversely, the transaction would likely not be a true sale if it includes certain indicia of retained ownership, such as: i) the receipt by the seller of certain servicing fees in connection with the disposed assets, ii) the right of the seller to repurchase the disposed assets, iii) the right of the seller to share in the profits or revenue generated by the disposed assets, or iv) the right of the seller to terminate the sale transaction.

53. Further, it is industry practice, when debts are sold and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

54. Also, it is industry practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either

explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney representation letters and/or cease and desist letters.

55. LVNV was notified by Synchrony of Plaintiff's attorneys' representation in the sale file(s) or the sale file name included a notation which informed LVNV that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

56. LVNV was notified by Synchrony of the Letters of Representation in the account level documentation.

57. LVNV was notified by Synchrony of the cease and desist in the sale file(s) or the sale file name included a notation which informed LVNV that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

58. In fact, LVNV has a pattern and practice of communicating with consumers after receiving attorney representation letters and/or cease and desist letters.

59. In fact, LVNV has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' representation.

60. In fact, LVNV has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' information.

61. LVNV's agent was notified of Plaintiff's attorneys' representation in the Letters of Representation when LVNV transferred, assigned, or otherwise placed the alleged debt for the purposes of collection.

62. LVNV's agent had actual notice of the Letter of Representation either from the placement file or account level documentation such as account statements for Plaintiff and notices of attorney representation.

63. The November Email alleged that Plaintiff no longer owed money to Synchrony, but now owed $1,103.97 to LVNV.

64. However, Plaintiff was never involved in any transaction with LVNV for $1,103.97 and never entered into any contract with LVNV for the payment of $1,103.97. Plaintiff was never indebted to LVNV, and was never indebted to LVNV for $1,103.97. LVNV never extended credit to Plaintiff for $1,103.97. LVNV does not possess competent proof that Plaintiff owes $1,103.97 to LVNV.

65. LVNV holds no legal right, title, or interest in $1,103.97 owed by Plaintiff.

66. LVNV's debt collector agent holds no legal right, title, or interest to demand payment of $1,103.97 from Plaintiff on behalf of LVNV.

67. The acts of LVNV as described in this Complaint were performed by LVNV or on LVNV's behalf by its owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to LVNV in this Complaint shall mean LVNV or their owners, officers, agents, and/or employees.

68. LVNV's conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from LVNV's conduct.

69. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

70. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will ultimately cause Plaintiff further unwarranted economic harm.

71. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will

ultimately cause Plaintiff further unwarranted harm to Plaintiff's credit rating.

72. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will ultimately cause Plaintiff to be sued.

73. A favorable decision herein would serve to deter LVNV from further similar conduct.

**FIRST COUNT**
**Violation of 15 U.S.C. §§ 1692c(b) and 1692f**

74. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

75. The Plaintiff is a "consumer" as that term defined by the FDCPA.

76. LVNV is a "debt collector" as that term is defined by the FDCPA.

77. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

78. The November Email is a "communication" as that term is defined by the FDCPA.

79. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

80. 15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

81. The third-party vendor does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

82. LVNV's conveyance of Plaintiff's personal and private information to its debt collector is a "communication" as that term is defined by the FDCPA.

83. Plaintiff never consented to LVNV's communication with the third-party vendor concerning the alleged debt.

11

84. Plaintiff never consented to LVNV's communication with the third-party vendor concerning Plaintiff's personal and/or confidential information.

85. Plaintiff never consented to LVNV's communication with its debt collector concerning Plaintiff's personal and/or confidential information.

86. Plaintiff never consented to LVNV's communication with anyone concerning the alleged debt or concerning Plaintiff's personal and/or confidential information.

87. Upon information and belief, LVNV has utilized a third-party vendor for these purposes thousands of times.

88. LVNV utilizes a third-party vendor in this regard for the sole purpose of maximizing its profits.

89. LVNV utilizes a third-party vendor without regard to the propriety and privacy of the information which it discloses to such third-party.

90. LVNV utilizes a third-party vendor with reckless disregard for the harm to Plaintiff and other consumers that could result from LVNV's unauthorized disclosure of such private and sensitive information.

91. LVNV utilizes a third-party vendor with reckless disregard for Plaintiff's right to privacy.

92. LVNV utilizes a third-party vendor with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

93. LVNV violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged debt to the third-party vendor.

94. 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

95. The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

96. LVNV disclosed Plaintiff's private and sensitive information to the third-party vendor.

97. LVNV violated 15 U.S.C. § 1692f when it disclosed Plaintiff's private and sensitive information to the third-party vendor.

98. As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during the debt collection process were inadequate to protect consumers. 15 U.S.C. § 1692(a)-(b).

99. Specifically, Congress sought to protect consumers from communications by debt collectors to third parties. See S. Rep. No. 95-382, at 4 (1977) reprinted in U.S.C.C.A.N. 1695, 1698.

100. As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

101. A violation of Section 1692c(b) is an invasion of privacy.

102. As described herein, LVNV violated Section 1692c(b).

103. As described herein, LVNV invaded Plaintiff's privacy.

104. A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

105. A violation of Section 1692c(b) is a public disclosure of private facts.

106. As described herein, LVNV violated Section 1692c(b).

107. As described herein, LVNV publicly disclosed Plaintiff's private facts.

108. For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692c(b) and 1692f and is liable to Plaintiff therefor.

**SECOND COUNT**
**Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10)**

109. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

110. The Plaintiff is a "consumer" as that term defined by the FDCPA.

111. LVNV is a "debt collector" as that term is defined by the FDCPA.

112. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

113. The November Email is a "communication" as that term is defined by the FDCPA.

114. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

115. 15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

116. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

117. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

118. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

119. An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

120. An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not owe that amount is a violation of 15 U.S.C. §§ 1692d, 1692e,

1692e(2)(A) and 1692e(10).

121. As previously stated in this Complaint, Plaintiff did not owe the amount the November Email alleged is owed to LVNV by Plaintiff.

122. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, amounts to conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

123. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

124. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false representation of the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A).

125. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10).

126. For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10) and is liable to Plaintiff therefor.

## THIRD COUNT
### Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

127. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

128. The Plaintiff is a "consumer" as that term defined by the FDCPA.

129. LVNV is a "debt collector" as that term is defined by the FDCPA.

130. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

131. The November Email is a "communication" as that term is defined by the FDCPA.

132. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

133. 15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

134. As described herein, LVNV violated 15 U.S.C. § 1692c(a)(2).

135. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

136. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

137. LVNV invaded Plaintiff's privacy.

138. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

139. 15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

140. As described herein, LVNV violated 15 U.S.C. § 1692c(c).

141. A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

142. A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

143. LVNV intruded upon Plaintiff's rights to solitude and seclusion.

144. A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

145. A violation of Section 1692c(c) is an interference with the attorney-client relationship.

146. LVNV interfered with Plaintiff's and her attorney's attorney-client relationship.

147. For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and is liable to Plaintiff therefor.

## JURY DEMAND

148. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered as follows:

a. Finding LVNV's actions violate the FDCPA; and

b. Awarding damages to Plaintiff pursuant to 15 U.S.C. § 1692k; and

c. Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

d. Awarding the costs of this action to Plaintiff; and

e. Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

f. Such other and further relief that the Court determines is just and proper.

Dated: May 22, 2024

By: */s/ Antranig Garibian*

*Attorneys for Plaintiff
Janine Roe*